FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 12 PM 3: 56

Bradley D. Owens, Esq.
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
(907) 563-8844
(907) 563-7322 (facsimile)
Counsel for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| N.S., by and through his parents, J.S. and R.S., <br><br> Plaintiff, <br><br> v. <br><br> ANCHORAGE SCHOOL DISTRICT, <br><br> Defendant. | Case No. A05-0177 CV (JKS) |

### DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE
### TO MOTION TO COMPEL DISCOVERY

Plaintiffs spend the first 5 1/2 pages of their Response to this motion describing the evolution and "facts" of this case. However, despite this effort to redirect the inquiry, this motion concerns simply plaintiffs' duty to adequately disclose the precise reasons for their invocation of the claim of privilege in response to 9 discovery requests. Moreover, even though plaintiffs have made a belated last-second supplemental disclosure, that does not moot the inquiry before the court in this motion.

Plaintiffs make three arguments in response to this motion: First, that a privilege log was unnecessary; second, defendant is not entitled to review the actual representation agreements since DLC is a nonprofit agency; and third, the need for a privilege log is

18

moot. Defendant will review each of these arguments in turn, as well as the "authority" DLC offers to support its arguments.

However, before turning to the arguments, it is useful to recognize several undisputed aspects of this matter: Plaintiffs do not, and cannot, dispute that they invoked a claim of privilege in response to 9 discovery requests. Plaintiffs do not, and cannot, dispute that they provided no disclosure, through a privilege log or otherwise, that adequately explained the precise reasons for the claim of privilege for any of these 9 responses. Moreover, plaintiffs do not, and cannot, dispute that in response to a reasonable request for supplementation to provide that information, they simply refused to provide a privilege log or any appropriate information that would adequately describe the basis for their invocation of privilege in each instance.

Moreover, all that plaintiffs have done to supplement their insufficient responses is to assert the only "documents" for which they claim privilege relate to "the representation retainer agreements." They assert that "no documents other than representation retainer agreements exist" that are relevant to these requests. However, this belated supplemental response[1] is insufficient for several reasons: It does not adequately provide specific and precise reasons upon which plaintiffs rely to invoke the privilege in each of the 9 responses where they asserted it. In addition, plaintiffs did not submit to the court for *in camera* review any of the documents that they assert are included within the broad sweep

---

[1] This supplemental response was not signed by plaintiff until December 8, 2005.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 2

of what plaintiffs describe as "representation retainer agreements" or "confidential settlements.

Furthermore, based on the blank representation agreement provided by plaintiffs' counsel,[2] other than the description of legal services that might be stated on page one, which could easily be redacted, there is nothing else within the agreement that could be considered privileged under the circumstances of this case and the applicable law. More importantly, a copy of the representation agreement signed by plaintiffs would show, in Section IV(A)(2) at page 4, the actual hourly rates disclosed to plaintiffs at the time the agreement was signed. That information is clearly relevant to determining the reasonable hourly rate in this case, at least as the hourly rates were disclosed by DLC at the outset in the actual representation agreement signed by plaintiffs.

1. **The Discovery Requests.**

Plaintiffs do not address in their response to this motion each of the discovery requests for which they invoked the claim of privilege. Plaintiffs do not provide any explanation of the specific reasons why the privilege applies in each instance where it is invoked. All that plaintiffs say in response is that "plaintiff's counsel found it necessary to assert the attorney-client privilege" but provide no further information that would allow the court or defendant to understand the specific reasons regarding what was subject to this privilege or why. It is useful to review each discovery request where

---

[2] A copy of the blank representation agreement provided by plaintiffs is attached hereto as Exhibit 6.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 3

plaintiffs asserted the privilege in light of their supplemental disclosures and response to this motion.

**Request No. 1:**  *Produce any and all documents that describe any agreement or understanding between plaintiffs and DLC concerning attorney's fees and/or costs in this matter.*  Plaintiffs' response is simply that "DLC does request its clients sign representation agreements which outline in general terms the nature of services to be provided or contemplated, strategies to be employed and other confidential information." However, it has not provided a copy of the agreement signed by plaintiffs nor describe specifically what is in this agreement that might be covered by their claim of privilege. Of course, as pointed out above, the actual hourly rates specified in the agreement signed by plaintiffs is very relevant to the reasonable hourly rate claimed by DLC.

**Request No. 2:**  *Produce any and all documents between DLC and plaintiffs that discuss the rates or hours charged by DLC for work in this matter.*  Again, plaintiffs' response is simply there is only the representation agreement, which they refuse to disclose based on a claim of privilege. Plaintiffs' response means there are no other documents or materials, such as correspondence or e-mails, concerning the hourly rates or hours charged by DLC in the underlying matter. Thus, it appears that DLC improperly invoked the privilege claim at all since their response now is there are no such documents! If there were no such documents, the reasonable and proper response was to simply say so—not to claim privilege for non-existent materials! Additionally, if this

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 4

response is accurate, it appears that plaintiffs had no knowledge of what was being "charged" to them, nor the number of hours incurred by DLC.

**Request No. 4:** *Produce any and all bills, invoices, or other materials sent by DLC to plaintiffs concerning any costs or charges for work performed on this matter.* In their response, plaintiffs now say there are no such documents or materials. However, that is at odds with their earlier invocation of privilege—if no such documents or materials exist, why would DLC assert a claim of privilege? Why wouldn't plaintiffs' counsel simply state this in response to defendant's November request for clarification or supplementation? Why would DLC wait until two days before submitting its response to this motion to submit a supplemental disclosure to clarify and explain that has been the case all along?[3] Suffice it to say that DLC has prolonged this dispute needlessly if the current response is accurate.

**Request No. 5:** *Produce any and all documents sent by plaintiff to DLC showing payment of any bills or invoices for costs and/or work performed by DLC on this matter.* The same concerns expressed above regarding Request No. 4 apply equally here.

**Request No. 6  :** *Produce any and all documents sent by plaintiff to DLC concerning or discussing any bills for or the work performed by DLC on this matter.* The same concerns expressed above regarding Request No. 4 apply equally here.

---

[3] Defendant wishes to avoid responding to the unseemly allegations made in plaintiffs' response at pages 4-5 since those allegations seem irrelevant to the merits of this motion.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 5

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**Request No. 7:** *Produce any and all documents that describe any agreement or understanding between DLC and other parents for legal assistance or representation concerning IDEA matters during the two years prior to the filing of this lawsuit.* DLC has existed and operated in Alaska for a number of years—certainly more than the last two years—providing legal advice and representation to parents in IDEA matters. However, it is only in the last 18 or so months, since plaintiffs' counsel arrived in Alaska from Minnesota, that matters have become significantly more adversarial. This is the first instance that defendant is aware of where either parents or DLC have filed any lawsuit for attorney's fees under the IDEA in Alaska. As a consequence, the fee or representation agreements with other parents both prior to and since the arrival of new counsel are relevant to determine whether any change in representation as occurred and, if so, what and why. Since DLC apparently does not bill any parents for fees in these cases, that information is relevant. But more importantly, DLC apparently has not provided any agreements to the court for its review *in camera* to determine if the privilege applies in some or all such agreements, or whether it is possible and reasonable to redact personally identifiable information from these other agreements so that defendant can review these agreements without disclosure of any legitimately protected information. If there has been a change in the hourly rates "charged" by DLC for its services over the last two years, that is relevant to this court's determination of a reasonable hourly rate in this lawsuit.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 6

**Request No. 9:** *Produce any and all documents prepared by DLC during the two years prior to the filing of this lawsuit requesting or demanding that a local education agency pay to DLC attorney's fees and/or costs incurred in any IDEA matter.* Not only does DLC refuse to provide these materials, it does not provide any specific explanation of what materials exist or why any of those materials are protected by any privilege. Certainly, any letters or documents from DLC in any IDEA matter demanding the a school district pay attorney's fees in an IDEA matter is relevant to the hourly rate and number of hours incurred in other similar matters. Even if DLC claims these materials are not directly relevant, they are certainly within the purview of materials that are reasonably calculated to lead to the discovery of admissible evidence in this matter. Plaintiffs have a very high threshold to establish these materials should not be disclosed on the basis of a relevance objection.

**Request No. 18:** *Describe whether DLC obtains approval from parents prior to incurring attorney's and/or costs in IDEA matters and, if so, specifically describe the process used to obtain approval.* DLC has not provided any information to this court or to defendant that would allow either to assess whether any privilege applies, as claimed. Most importantly, this request does not call for the disclosure of confidential or protected information—instead, it simply requests whether such prior approval occurs and, if so, what the procedure is. There is no request for disclosure of any discussions of protected information. Plaintiffs have simply not met their burden in response to this request.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 7



**Request No. 23:** *Describe specifically whether any hours for attorney's fees and/or costs incurred in this matter were either not billed, were waived, or payment delayed or forgiven by DLC and, if so, explain the reasons for each and every instance.* Plaintiffs now explain, more than one month after their discovery responses and several weeks after a request for clarification that DLC sent and they received no bills or invoices for attorney's fees or costs in this matter. If so, why was an objection made that this was protected privileged information? Why didn't DLC simply respond to this request by explaining (as they did for the first time in the response to this motion) that, "as a nonprofit organization, DLC does not charge its clients" for any attorney's fees or costs incurred in an IDEA matter? Why was it necessary for defendant to have to file this motion in order to have DLC provide an appropriate response?

2.  **Case Authorities**.

The cases cited by plaintiffs do not support their position; those cases actually support defendant's argument in this motion. First, each of the cases cited by plaintiffs involved significantly different facts and circumstances—documents subpoenaed by the government as part of a criminal grand jury investigation—than this case involving a statutory claim for attorney's fees. But even still, these cases support what defendant claims here—that mere "blanket" assertions of privilege are "extremely disfavored"—the proper procedure for asserting the privilege as to particular documents, or portions, is to submit them *in camera* for inspection by the court and provide "an explanation of how the information fits within the privilege." *In Re Horn*, 976 F.2d 1314, 1318 (9th Cir.



DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 8

1992) and *In Re Grand Jury Witness (Salas & Waxman)* 695 F.2d 359, 362 (9th Cir. 1982). Moreover, there is no dispute that plaintiffs, as the party invoking the privilege, have the burden of clearly explaining the precise reasons the claimed materials are subject to the privilege asserted. *Horton v. U.S.*, 204 F.R.D. 670, 673 (D.Col. 2002).[4]

It is indeed unfortunate that plaintiffs were not more forthcoming in their original discovery responses by providing an appropriate privilege log. Certainly, it is even more troubling when they were requested to provide an adequate supplemental explanation of their claim of privilege to these 9 discovery requests but curtly dismissed the request. It should not have been necessary for defendant to file this motion before they took any reasonable step to appropriately respond to the obvious need for supplementation and their duty to provide the information requested.

It is troubling they continue to refuse to provide an adequate and appropriate response as they are required under the rules of discovery. Because they have not met their burden, this motion is not moot. Unlike the circumstances in *In Re Giorgio*, 134 F.3d 971 (9th Cir. 1998), a case involving a debtor's challenge to a writ of enforcement after they had vacated the premises, a live controversy continues in this matter—namely, a determination of attorney's fees under provisions of the IDEA. There, once the debtors

---

[4] Plaintiffs' effort to distinguish the *Horton* decision on the basis that it arose "in the context of a third-party beneficiary of the attorney's services in an employment dispute" completely misses the point. The rule cited by defendant in that case is of general application—not limited merely to that particular context. Similarly, the rule for which defendant cited to *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D.Ind. 1991) is of

vacated the premises, there was no further live controversy before the bankruptcy court concerning the enforcement of the writ and, thus, the court lost jurisdiction. In this matter, an actual live controversy remains regarding attorney's fees. This motion concerns only whether plaintiffs have properly complied with their burden of claiming privilege in response to discovery.

3.  **Reply to Arguments.**

Plaintiffs' first argument is that a privilege log was unnecessary. Plaintiffs' have offered no authority to support this argument, probably since none could be found. The cases cited by defendant clearly show that the expected practice where a claim of privilege is asserted is that the party asserting the claim must provide specific and precise reasons to support the claim. That is often accomplished through a privilege log that provides sufficient information to allow the parties and the court determine if the claim is properly made. Finally, the claim that a privilege log was unnecessary is belied by the late submission of a log, even though it was inadequate.

Second, plaintiffs assert that defendant is not entitled to review the actual representation agreements since DLC is a nonprofit agency. Once again, no authority is offered to support that assertion. In the absence of any support for this assertion, plaintiffs' argument would provide a novel legal protection for nonprofit organizations that, to defendant's knowledge, does not currently exist under the law. The third

---

general application and not limited to the facts of that case. Thus, plaintiffs' contention that these cases "simply do not apply" is wholly without merit.

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 10

argument, that the need for a privilege log is moot, is discussed above: In this matter, an actual live controversy remains regarding attorney's fees.

Based on the discovery responses submitted by plaintiffs and their refusal to timely provide an appropriate privilege log—one that includes a specific explanation of the precise reasons why any privilege attaches for each response where it is invoked—the court should determine that plaintiffs have failed to comply with their obligation under the federal rules of civil procedure. Defendant respectfully requests this court to grant this motion and require plaintiffs to prepare and provide a privilege log that includes all appropriate information and to submit all documents or materials for which a privilege has been invoked to the court for *in camera* review.

Dated in Anchorage Alaska this 12th day of December 2005.

Jermain, Dunnagan & Owens, P.C.

By: _____
     Bradley D. Owens
     Alaska Bar #7610122

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December 2005 a copy of the foregoing document was sent by facsimile and first-class mail to the following person:

Sonya D. Kerr
Disability Law Center
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

_____

3227.1141 - #111998

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**
*N.S. v. Anchorage School District*, Case No. A05-0177 CV (JKS)
Page 11

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322