### STATE OF ALASKA
### DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT
### SPECIAL EDUCATION DUE PROCESS HEARING
### BEFORE LINDA M. CERRO, HEARING OFFICER

IN THE SPECIAL EDUCATION    )
DUE PROCESS MATTER: 05-12   )
    )
v.    )
    )
ANCHORAGE SCHOOL DISTRICT   )

**RECEIVED**
**FEB 09 2005**

**DEED Case No. HR 05-12**

### DECISION AND ORDER

**Introduction**

This matter came on for Due Process Hearing under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(f); and the Alaska Education of Children with Disabilities Act, AS 14.30.193, on December 13, 2004, before Linda M. Cerro, Special Education Hearing Officer. Present were the parents of the student in question, and their counsel, Sonja Kerr, Esq., Disability Law Center of Alaska. Representing the Anchorage School District (District) was Bradley Owens, Esq., Jermain Dunnagan & Owens. Present for the District were Jerry Sjolander, Executive Director for Special Education; Dana Dugdale, Supervisor for Elementary Special Education; and Lynette Jordan, Coordinator for Early Childhood Development.

During the one day closed hearing, testimony was received from Dana Dugdale, Jerry Sjolander, Lynette Jordan, Cindy Olson and both parents. Parents' exhibits 1 through 10, and District exhibits A through C were admitted. (Tr. 196, 203).

**Procedural History**

This case was initiated by the parents' September 30, 2004, Request for Due Process Hearing, received by the District on October 4, 2004, alleging failure by the District to fulfill the requirements of Corrective Action Orders issued by the State of Alaska Department of Education and Early Development (DEED), in two previous Complaint actions under 4 AAC 52.500. The 45 day time frame for decision under 4 AAC 52.550 and 34 C.F.R. § 300.511 was November 14, 2004. The parents named both the District and DEED as parties to this due process proceeding. The hearing officer was selected and accepted by the parties, and was appointed on October 11, 2004. The State of Alaska filed a Motion to Dismiss it as a party to this proceeding on October 14, 2004. A telephonic pre-hearing conference took place on October 21, 2004. The District's request for an extension of the 45 days due to the heavy trial schedule of its counsel was granted,

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

**EXHIBIT C**
Page 1 of 11

as was the parents' request for an extension of time to file an opposition to the Motion to Dismiss. The 45 day time frame was extended until January 3, 2005.

The State of Alaska's Motion to Dismiss it as a party was granted on November 23, 2005. The Due Process Hearing involving the District took place on December 13, 2004. The parents' unopposed request for a further extension of the 45 days, in order to provide a written closing argument after completion of a transcript of the hearing, was granted. Allowing time for completion of the transcript, and written closing and rebuttal arguments, the 45 days was again extended until February 7, 2005.

## Issues Presented

1.    Whether the District complied with the Corrective Action Order issued in Complaint 04-04?

(a) Did the District provide compensatory special education and related services to the Student, the amount, type and the dates of delivery of those services determined in cooperation with the parent?

(b) Did the District submit documentation of meetings with the complainant, offers made, and a schedule of the agreed upon compensatory services to DEED by January 16, 2004?

(c) Did the District submit documentation of the delivery of the agreed upon services to DEED within 10 working days of the completion of services?

(d) If the District failed to fulfill the terms of Corrective Action Order 04-04, what is the remedy?

2.    Whether the District complied with the Corrective Action Order issued in Complaint 04-14?

(a) Did the District schedule an IEP team meeting by August 9, 2004, with a representative from the district's transportation office in attendance, to consider the unique transportation needs of the Student, and develop an appropriate transportation plan for the 2004-2005 school year?

(b) Did the IEP team clearly document this transportation plan in an IEP amendment, and submit it to DEED by August 16, 2004?

(c) Has the IEP Amendment addressing the unique transportation needs of the student been substantially implemented?

(d) If the District failed to fulfill the terms of Corrective Action Order 04-14, what is the remedy?

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C
Page 2 of 11    Ex. 1
Page 27 of 48

3.      Whether the Student was denied a FAPE in the Student's 3rd grade classroom at Denali Elementary School? If so, what is the appropriate remedy?

## Findings of Fact

1.      The subject of this Due Process proceeding is a 10 year old 4th grade student eligible to receive special education services from the Anchorage School District as a child with autism. At the time of the hearing he was attending Baxter Elementary School, having previously attended Denali Elementary School and Taku Elementary Schools, all within the District.

2.      The student was previously the subject of two Complaints filed with DEED against the District under 4 AAC 52.500. Ex. P-1, Ex. P-2. The first Complaint, numbered 04-04, resulted in a December 5, 2003, Complaint Investigation Report, finding violations of 34 C.F.R. § 300.13 and 34 C.F.R. § 300.342(a), and ordering Corrective Action. The Corrective Action ordered in Complaint 04-04 required the District: (1) to provide compensatory special education and related services, the amount, type, and the dates of delivery of those services to be determined in cooperation with the parent; (2) to submit to DEED by January 16, 2004, documentation of meetings with the Complainant, offers made, and a schedule of the agreed upon compensatory services; and (3) within 10 working days of the completion of the services, submit documentation of the delivery of the agreed upon services to DEED. Additionally, the District was required: (4) to develop procedures to address special education needs of known IEP students once they are accepted in a District alternative or charter school. (5) Procedures developed were to be submitted to DEED by February 1, 2004. Ex. P-1.

3.      Complaint Investigation Report and Corrective Action Order 04-04, were mailed and emailed to the parties on the issue date, December 5, 2003, and to the parents again on December 12, 2003. Ex. 1, p. 1; Ex. 4, p. 90. The District was closed for winter break from December 19, 2003 to January 4, 2004.

4.      The parties began communicating sometime between the issue date and January 15, 2004, in an effort to determine the number and type of compensatory hours to be provided under the Corrective Action Order. T. 5-6; Ex. A, p. 29. A meeting was scheduled for January 16, 2004. Ex. A, p. 29. At the meeting the parent and Dana Dugdale, the District representative in the Corrective Action, agreed upon 10.5 hours of speech therapy to be provided by the student's speech therapist at school. These services began the week of January 19, 2004. T. 6; Ex. A, pp. 15, 18. The parents do not take issue with the manner or provision of the speech therapy. Tr. 12, 72. In addition to speech therapy, another 60 hours of compensatory services were offered. The parties agreed to investigate a variety of different program offerings to determine how and where those 60 hours should be allocated. T. 6, 71. The parties acknowledged the Student's needs in both reading and social/behavioral skills. Ex. A, pp. 24-30, 39.

5.      The crux of the dispute between the parties over Corrective Action Order 04-04 is whether these 60 hours were the full extent of all compensatory hours offered in satisfaction of the Corrective Action Order, or whether an agreement was later reached for an additional 30 hours for social/behavioral skills.

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C

Page 3 of 16

Ex. 1
Page 28 of 48

6.    From the January 16, meeting through January 27, 2004, the parties communicated by email. For Reading, the parties were discussing the Lindamood Bell Summer Clinic or Sylvan Learning Center. Ex. A, p. 26. Considerations for social/behavioral support included the Campfire Vacation program, Challenge Alaska and the Trailside Discovery Program. Ex. A, pp. 24-27.

7.    On February 5, 2004, the parent wrote to Dugdale," *I am thinking that maybe we should explore using most of [Student's] hours at Sylvan. He can do the 10 hours of speech with Mary George . [Student's] true deficit area is in reading. The way that Sylvan is arranged he will get great amount of social interaction with many other people.*" (Emphasis added). Ex. A, p. 20. Dugdale's same day response: "I am open to that idea," and on February 10: "I'd like to suggest that we provide 60 hours of Sylvan instruction...spread over the school year...would need to be completed in June." *Id.* From this exchange it is evident that at this juncture both parties understood that "[Student's] hours" were the 60 offered on January 16, and reiterated on February 5. While the parties had previously discussed different programs to serve the Student's separate needs in reading and social skills, the parent's February 5 email acknowledges Sylvan as meeting the Student's needs in both areas. The parties then began a series of emails discussing summer Sylvan rather than lengthening the Student's school week. Lindamood Bell as an alternative to Sylvan for reading was still on the table. Ex. A., pp. 15-17. It is clear that while the District had extended offers, the discussion remained open, no final offer had been extended, none accepted, and no binding agreement reached.

8.    The subject of the Century 21 after school program did not arise in discussions between the parent and District until on or about February 27, 2004, when Dugdale was copied with an email from the Director of the program to Julia Forte, about the parent's interest in the Student's attendance. *Compare* Ex. A, pp. 16-29; T. 10, 72, *with* Ex. A. p. 12. According to the documentary and testimonial evidence, the parent's discussions with the school about the Student's participation in the Century 21 program had never included Ms. Dugdale. Ex. A, pp. 12-15; T. 10. On March 9, 2004, the parent asked for a meeting concerning the Century 21 program. Ex. A, p. 14. Ms. Dugdale, unable to attend, "briefed Lynn [Jordan] on the situation, [gave] her all the email exchanges [between the parties]," and instructed that "[Ms Jordan] can attend a meeting in my stead." Ex. A, p. 14. The meeting took place on March 17, 2004, with Lynn Jordan attending on behalf of Dugdale.

9.    Authority to commit District resources in this case rested with Ms. Dugdale, Mr. Sjolander, or persons they might delegate. T. 21. Ms. Jordan's instructions to attend the March 17 meeting concerning the Student's participation in the Century 21 after school program came from both Ms. Dugdale and Mr. Sjolander. T. 174; Ex. A, p. 14. While Ms. Dugdale testified that she did not "specifically direct [Ms. Jordan] to [negotiate comp ed with the family]" beyond the 60 hours she had already offered, she did not deny that Jordan may have had authority at the March 17 meeting in Dugdale's absence, and that Ms. Jordan is "a highly skilled trusted employee of the district." T. 148,154. That Ms. Jordan at that time believed she had been delegated authority to commit District resources for the Century 21 program is apparent from her March 17, 2004, email setting forth the agreements reached by the meeting's attendees. Ex. A, p. 10. **Ms. Jordan's email describes the parties' agreement in terms that any recipient could**

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT  C

**only interpret as the District offering social skills/behavioral support in the form of payment for paraprofessional attendance with the Student in the Century 21 program** *in addition to* **60 hours of compensatory education reading.** The email sets out the only remaining piece then necessary "to satisfy Complaint Investigation #04-04": whether the 60 hours of reading compensatory ed would take place at Sylvan or Lindamood Bell. Recipients of the email included the parents, Ms. Dugdale and Mr. Sjolander. Ex. A, p. 10. Neither Ms. Dugdale nor Mr. Sjolander ever countermanded Ms. Jordan's March 17 offer.

10. The Student was enrolled in the Century 21 program, and was to attend two hours per day, three days per week, from April 12 through May 14, for a total of 30 hours. Ex. A, p. 11. The Student attended approximately 5 hours before the parent determined that the program was not effective in meeting the child's social and behavioral needs. Ex. P-10, T. 151-152. The parent reported these concerns to the District on April 28 and May 7, and sought alternatives for the remaining 25 hours of social/behavioral comp ed. Ex. 10. The District's response to the parent's April 28, inquiry was equivocal, and to the May 7, request: silence. Ex. 10, pp. 2-3. The parents seek the 25 hours of compensatory education for social and behavioral skills they believe remain due from the District's March 17 offer.

11. On June 28, 2004, the parents chose Sylvan Learning Center for the comp ed in reading. Ex. A, p. 9. The Student began assessment and services at Sylvan on July 13, 2004. Ex. A, pp. 2-4. Sessions are scheduled by the parents, with invoices for services directed to the District. Ex. A, pp. 5, 9. At the time of the hearing, the student had completed approximately 31 hours of services at Sylvan, with 29 hours still to be scheduled by the parent. Accordingly, the District has not submitted the final report due DEED upon completion of services. The parents do not take issue with the manner or provision of the services at Sylvan.

12. The District did not submit documentation of meetings with the parents, offers made, and a schedule of the agreed upon compensatory services to DEED by January 16, 2004, as required under the Corrective Action Order. T. 45. Rather, the District sent progress reports to DEED on February 10 and March 2, 2004, sending its final report on services agreed upon on June 30, 2004. The report does not mention nor provide documentation concerning the negotiations involving, nor problems encountered with the Century 21 after school program. Ex. A, pp. 7-8, 15, 19.

13. As Corrective Action Order 04-04 required, the District developed procedures to address the special education needs of known IEP students once they are accepted in a district alternative or charter school. T. 49-50; Ex. A, p. 7; Ex. C. While the procedures were not developed by February 1, 2004, as the Corrective Action ordered, they were developed by late February, and were in place for the next lottery selections in March, 2004. T. 50-51, 54.

14. The second Complaint to DEED filed by the parents, numbered 04-14, resulted in a July 16, 2004, Complaint Investigation Report finding a violation of 34 C.F.R. § 300.342(a) and ordering the following Corrective Action: (1) The district shall schedule the IEP Team to meet no later than August 9, 2004. A representative from the district's transportation office who has authority to approve transportation services must be in attendance. The IEP Team shall consider the unique transportation needs of the Student and determine appropriate transportation for the

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C
Page 80 of 48

2004-05 school year.  (2) The determination of the IEP Team shall be clearly documented in an IEP amendment.  (3) A copy of the amended IEP shall be submitted to the Department of Education and Early Development by August 16, 2004.  Ex. P-2.

15.     The District did not schedule an IEP Team meeting to discuss the transportation needs of the Student by August 9, 2004, as Corrective Action Order 04-14 required.  The parties received the Complaint Investigation Report and Corrective Action Order on July 20, 2004. Ex. 5, p.1; Ex. B, p.28-29.  The first communication between the parties to address the Corrective Action occurred on or about August 3.  Ex. 5, p. 1.  For a number of reasons, the parties were hampered in their attempts to schedule the meeting by the date set out in the Order: appropriate school district personnel were not available due to the summer break, several members of the IEP Team were not in Anchorage during the specified time period, and others were not working due to scheduled non-work days.  Ex B, p. 7.  The parent asked for the addition of numerous individuals, including an occupational therapist, a speech and language professional, a behavior strategist and the Student's 3rd grade teacher from his previous school.  Ex. B, pp. 1, 7, 12, 17. The meeting was ultimately attended by 12 people.  A District transportation representative, Steve Kalmes, was in attendance.  Ex. B, p. 11.  During the District's efforts to schedule the meeting, Mr. Sjolander obtained an informal extension of time from DEED staff, who indicated to him that the significant date by which a transportation plan should be in place to satisfy the spirit of the Corrective Action Order was the first day of school, September 7.  T. 41-42.  While the direct, abbreviated transportation plan was in place for the first day of school, the bus schedule was not communicated to the parent until one hour before the scheduled pick up on the first day of school.  T. 83; Ex. 5, pp. 15, 18-21; Ex. B, pp. 2-3.  The transportation plan was to serve this Student's unique needs.  For this Student, preplanning and preparing the Student for changes and transition were critical to his success.  T. 83, 85, 89.   Given these unique needs, it was important that the bus schedule be communicated to the family more than one hour before the bus' arrival.  T. 83, 85.   The family had only one hour notice on September 7, 2004, and the parent drove the Student to school.  T. 94.

16.     The determination of the IEP Team was documented in a Prior Written Notice and an IEP Amendment on August 27, 2004.  Ex. B, p. 9; T. 45.

17.     A copy of the Prior Written Notice and IEP Amendment was submitted to the Department of Education and Early Development on October 15, 2004.  Ex. B, pp. 7-10; T. 44.

18.     The Prior Written Notice and IEP Amendment clarified that the Student would receive direct, expedited busing to and from home and school.  He would bypass the special ed shuttle, and travel via the most direct route on a course which would take no more than 30-40 minutes each way.  Ex. B, pp.9-10; T. 86-87.  Training would be provided for his bus drivers and aides.  Ex. B, p. 10.

19.     The Student's school bus schedule called for pick up from home at 8:17 a.m. (Later changed to 8:19 a.m.), and arrival at school at 8:50 a.m., for a total of 31-33 minutes.  His schedule from school to home called for departure at 3:35 p.m., and arrival at 4:24 p.m., a total of 49 minutes.  Ex. B, pp. 2-4.  The Parent, writing to the District transportation representative, Wayne Campbell, on November 9, 2004, reported the Student's bus not arriving until after 8:30

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT _C_

Page __6__ of _/Ex_ 1

a.m. on a fairly consistent basis. Ex. 5, p. 60, 75. Mr. Campbell acknowledged the bus' late arrivals. Ex. 5, p. 96. Parent emails support a finding that the bus arrived after 8:30 a.m. on November 10, 15, 16. Ex. 5, pp. 60, 67, 68. Staff was not trained to work with the Student on the bus when school began on September 7. T. 95. That training was not completed until sometime in October, 2004. T. 113. The bus' arrival after 8:30 a.m. required the parent to drive the Student to school to ensure the timely arrival of all of her children to their respective schools. T. 135; Ex.5, p. 60, 75.

20.    The District bus schedule calls for a 49 minute ride home from school for the Student. Because a 49 minute bus ride is too long for the Student, he usually does not ride the bus home in the afternoon. T. 136.

21.    The letter of complaint to DEED that resulted in Complaint Investigation 04-04, was filed by the parent on September 28, 2003. On October 2, 2003, the parent became aware of a letter that had been circulated by the parent of one of the Student's Denali Elementary 3rd grade classmates, with the tacit agreement of the teacher, through the classroom student folders. T. 36. The letter complained about the school having allowed one disruptive and assaultive student in the class for four weeks before an aide was provided. Ex. 3. While the letter did not identify the student by name, it was known to be the Student in this case. The letter may have resulted from the classroom teacher complaining to parents of other students in the class that the District was not providing her with sufficient support for a special education student or students in the classroom. T. 205-206. The parent relayed the letter to the Complaint Investigator, and it was considered during Complaint Investigation 04-04. Ex. 1, pp. 2-3. While the Complaint Investigator did not make explicit findings with respect to the letter, she thoroughly investigated the environment and circumstances in the Student's 3rd grade class at Denali, found the Student had been denied FAPE, and crafted Corrective Action Order 04-04. Those facts will not be re-adjudicated here. Moreover, the relief sought by the parent for the letter and subsequent meeting at Denali Elementary: that the appropriate staff person at Denali be disciplined and a letter of reprimand placed in the employee's personnel file, took place prior to the due process hearing. T. 38, 51-54; 210-211.

## Conclusions of Law

1.    The District worked cooperatively with the parent to arrive at an agreement to provide compensatory services in satisfaction of Corrective Action Order 04-04, by reaching agreement to provide 10.5 hours of compensatory speech therapy, 60 hours of compensatory services in reading, and 30 hours of services in social and behavioral skills.

2.    The District failed in providing 25 of the 30 hours of compensatory services in social and behavioral skills agreed upon. This failure appears to have resulted from confusion between District employees, and a misunderstandings between the parties, not from any wilful or bad faith actions by anyone. Ms. Dugdale had a reasonable expectation that the parties' agreement for compensatory services was comprised solely of the 10.5 hours of speech therapy and the 60 Sylvan hours, although as a recipient of Ms. Jordan's March 17 email, she should have realized that her original offer had been enhanced. Ms. Jordan had a reasonable expectation that she had been delegated the authority to commit District resources at the meeting concerning

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C  Ex 1
Page 3?/ of 48
Page 7

Century 21, having been sent to the meeting by both Ms. Dugdale and Mr. Sjolander. In her email sending Ms. Jordan to the meeting, Ms. Dugdale referred to Ms. Jordan's attendance as "in [her] "stead." Webster's Seventh New Collegiate Dictionary, defines "stead" as "*in the office, place or function ordinarily ...carried out by someone...else.*" (Emphasis added). Neither Ms.Dugdale nor Mr. Sjolander explicitly deny Ms. Jordan had been delegated authority to commit resources. Accordingly, Ms. Jordan had that authority in this instance. The parent had an equally reasonable expectation from the March 17 meeting that 30 hours of compensatory education for social/behavioral skills had been offered by the District in addition to the 60 hours offered earlier, and that Ms. Jordan had the full authority of her superiors to make that offer. Cooperation requires a continuously open avenue of communication. The District carried the burden of keeping those lines of communication open in order to fulfill the requirements of the Corrective Action Order. It failed to do so, and thereby denied the Student a free appropriate public education (FAPE).

3.      Significantly, prior to the March 17 meeting, there had been no definitive acceptance by the parents of Ms. Dugdale's offer of a total of 60 hours in full satisfaction of Corrective Action Order 04-04. However erroneous Ms. Jordan's offer may have been at the time she made it, having been apprised of Ms. Jordan's offer of an additional 30 hours compensatory services, neither Mr. Sjolander nor Ms. Dugdale countermanded it. The Student's enrollment and attendance in the Century 21 program represented the parents' acceptance of the District's offer of 30 hours of social skills/behavioral support. The parent's June 28, letter accepting the 60 hours at Sylvan, rather than Lindamood Bell, represented the parents' acceptance of the March 17 offer, in full satisfaction of the comp ed hours to be cooperatively determined under Corrective Action Order 04-04.

4.      While the District did not submit the required documentation to DEED of its meetings with the parent, offers made, and a schedule of the agreed upon compensatory services by the due date set out in the Corrective Action Order, its ultimate filing on June 30, 2004, was reasonable under the circumstances. Through their cooperative efforts, evidenced through numerous emails, the parties accorded each other additional time to investigate and consider a variety of alternatives in an effort to determine which services would serve the Student best. The District was cognizant of and alerted the parent to the time restraints imposed by DEED, but did not pressure her to make decisions prematurely. The District filed interim progress reports with DEED on February 10 and March 2. The parent did not complain about any delays by the District in this regard. No harm resulted to the Student from the actions of the District in granting the parent the time she required and utilized to decide which options to choose for her son. After receiving the parent's selection on June 28, the District filed its report with DEED on June 30. Under the circumstances, the District could not have filed a final report any sooner. The delay was caused by implicit agreement of the parties, is excusable, and did not result in a denial of FAPE.

5.      The requirement in Corrective Action Order 04-04, that the District submit documentation of the delivery of the agreed upon services to DEED within 10 working days of the completion of the services, has not been violated. This requirement will not be ripe until completion of the 60 Sylvan hours, and of the compensatory hours ordered herein.

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT *C*
Page 8 of 11 Ex. 1
Page 33 of 48

6.      The District developed procedures addressing the special education needs of known IEP students once they are accepted in a district alternative or charter school, the final element of Corrective Action Order 04-04. While these procedures were not submitted to DEED by February 1, 2004, they were in place before the next lottery selection in March, 2004. Thus, while the letter of the Corrective Action Order was not followed, the spirit of the Order, that the procedures be implemented in sufficient time to safeguard the rights of IEP students entering a District alternative or charter school, was protected. No harm was suffered as a result of the District's late filing with DEED. This District violation was *de minimis*, and did not deny the Student FAPE.

7.      The District's failure to schedule an IEP team meeting to discuss and clarify the transportation needs of the Student by August 9, 2004, required by Corrective Action Order 04-14, was excusable under the circumstances. The District's failure to schedule the meeting early enough in August so that transportation worked smoothly for the Student's first day of school violated Corrective Action Order 04-14. The District was aware that the needs created by this Student's disabilities required sufficient notice for the family to provide their son with the transitional planning he required to be successful. While the IEP team meeting occurred on August 27, allowing five business days for the District to notify the family of the Student's bus schedule, the one hour notice provided was insufficient under the circumstances, and denied the Student FAPE.

8.      While the District clearly documented the IEP team's transportation plan in a Prior Written Notice and IEP Amendment on August 27, 2004, it failed to provide that documentation to DEED by August 16, 2004, as required by Corrective Action Order 04-14, filing it instead on October 15, 2005. Ex. B, pp. 7-10. No explanation was provided for the District's delay. The family's transportation problems continued at least into November, 2004. This violation of the Corrective Action Order was inexcusable, and a violation of the Student's entitlement to FAPE.

## Order

1.      The District will reimburse the parents for a private program or programs in which the parents elect to enroll the Student for enhancement of his social skills, up to the equivalent value of the 25 hours of the paraprofessional time it would have paid for the Student's enrollment in the Century 21 program.

2.      The District will submit documentation of the delivery of all of the compensatory services provided under Corrective Action Order 04-04, and this Order to DEED, within 10 working days of the Student's completion of the compensatory services provided at Sylvan Learning Center, and its reimbursement to the parents for the 25 hours of compensatory services in social/behavioral skills set out in paragraph 1 above.

3.      The District will reimburse the parents for those days which they were required to drive the Student to school due to the late arrival (beyond 8:30 a.m.) of the Student's morning bus. Payment shall be at the rate of $0.375 per mile for 8 miles, or $3.00 per day, for each documented day the parent drove the Student to school. The parent shall have until the close of

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C
Ex. 1
Page 9   Page 34 of 48

business on February 18, 2005, to present further documentation to this hearing officer supporting her claim of those specific dates upon which the bus arrived late, requiring her to drive the Student to school. The District shall have until the close of business on February 18, 2005, to present evidence from the bus Log Book reflecting the times the Student's bus arrived at his home and school each day, beginning September 7, 2004.

4.      The District will reimburse the parents the sum of $117.00, representing 39 days in September and October, 2004, at $3.00 per day, before the staff on the Student's bus was trained to provide services to the Student.

5.      The District will compensate the parents at the rate of $3.00 per day for up to a maximum of 170 school days, for those days during the 2004-2005 school year when a transportation plan providing the student transportation from school to home in 40 minutes or less is not in place. From September 7, 2004, through February 28, 2005, a period of 106 days, the District shall reimburse the parents the sum of $318.00. If a transportation plan providing transport in 40 minutes or less in not in place and working successfully by March 1, the District shall pay the parents an additional sum of $192.00 for the 64 remaining days of the academic year.

6.      The District will submit to DEED documentation of payment of the sums set out in paragraphs 3-5 herein by June 30, 2005.

## Appeal Rights

In accordance with AS 14.30.193(f) and 20 U.S.C. § 1415(i)(1)(A), this decision is a final administrative order. It is subject to appeal to the Superior Court of the State of Alaska in the manner provided under AS 44.62.560, and the applicable rules of court. An appeal may also be taken pursuant to 20 U.S.C §1415(i)(2)(A) and 34 C.F.R. § 300.512, and the applicable federal rules.

DATED this 7th day of February, 2005, at Anchorage, Alaska.

Linda M. Cerro
Due Process Hearing Officer

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C
Page ___ of ___   Ex. 1
Page 35 of 48

Certificate of Service
This is to certify that a copy of
the foregoing Decision and Order
in DEED HR No 05-12, was
mailed, first class U.S. postage
prepaid, on February 7, 2005, to:

Sonja D. Kerr, Esq.
Disability Law Center
3330 Arctic Blvd., Suite 103
Anchorage, Alaska 99503

Bradley Owens, Esq.
Jermain Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, Alaska 99503

Sharon Schumacher
State of Alaska
Department of Education and
Early Development
801 W. 10th St., Suite 200
Juneau, Alaska 99801

LINDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
ANCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT C
Page 11 of 11

FEB 2 5 2005

**STATE OF ALASKA**
**DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT**
**SPECIAL EDUCATION DUE PROCESS HEARING**
**BEFORE LINDA M. CERRO, HEARING OFFICER**

| | |
|---|---|
| **In the Special Education Matter** ) | |
| **Concerning   N.S** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **Anchorage School District** ) | **DEED Case No. HR 05-12** |

## ORDER

A Decision and Order was issued in this matter on February 7, 2005. In order to determine elements of the monetary award to the family for the District's failure to address the Student's unique transportation needs, both parties were ordered to submit further information documenting those dates upon which the Student's school bus arrived after 8:30 a.m., and those dates upon which the parent drove the Student to school due to the bus' late arrival.

The parent did not keep a log of the dates the bus was late. She did keep track of the days the Student rode the bus, which total 6. *See* February 17, 2005 parent letter. Whether or not the bus was late the remaining days cannot be determined with certainty from the parent's evidence.

The best evidence of the bus' arrival times would be the school bus Log Book. The District was ordered to present evidence from the bus Log Book reflecting the bus' arrival time at Student's home and school each day, beginning September 7, 2004. It has failed to do so.

Accordingly, for the 106 school attendance days between September 7, 2004, and February 28, 2005, at $3.00 per day, minus the six days the Student rode the bus in the morning, the parents are awarded the sum of $ 300.00 for the bus' late arrival.

This is in addition to the monetary awards to the parents set out in paragraphs 1, 4, and 5, of the February 7, 2005, Order.

DATED this 24th day of February, 2005, at Anchorage, Alaska.

Linda M. Cerro
Due Process Hearing Officer

.INDA M. CERRO
ATTORNEY AT LAW
2118 FORAKER DRIVE
.NCHORAGE, AK 99517
(907) 248-6944
FAX (907) 248-2045

EXHIBIT D
Page 1 of 1    Ex. 1
Page 37 of 48

3/22/2005
3:47 PM

**Disability Law Center of Alaska**
**Slip Listing**

Page     1

---

### Selection Criteria

| | |
|---|---|
| Slip.Classification | Open |
| Clie.Selection | Include: Nick Simmons |

---

Rate Info - identifies rate source and level

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 21          TIME<br>6/23/2004<br>WIP<br>File Review by Teresa Holt | tholt<br>File Review<br>Nick Simmons | 2.00<br>0.00<br>0.00<br>0.00 | 80.00<br>T@5 | 160.00 |
| 42          TIME<br>9/9/2004<br>WIP<br>Meeting - Initial meeting with client to discuss legal options and remedies. | skerr<br>Meeting<br>Nick Simmons | 1.33<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 300.00 |
| 43          TIME<br>9/9/2004<br>WIP<br>Participation in meeting with SKerr to discuss legal options and remedies. | tholt<br>Meeting<br>Nick Simmons | 1.33<br>0.00<br>0.00<br>0.00 | 80.00<br>T@5 | 106.67 |
| 20          TIME<br>9/30/2004<br>WIP<br>Letter to District requesting due process hearing. | skerr<br>Correspondence<br>Nick Simmons | 2.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T | 450.00 |
| 23          TIME<br>10/11/2004<br>WIP<br>Review of hearing officer appointment. | skerr<br>Review<br>Nick Simmons | 0.33<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 75.00 |
| 24          TIME<br>10/20/2004<br>WIP<br>Review state's motion to dismiss | skerr<br>Review<br>Nick Simmons | 0.33<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 75.00 |
| 25          TIME<br>10/20/2004<br>WIP<br>Preparation for prehearing | skerr<br>Preparation<br>Nick Simmons | 0.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 112.50 |
| 45          TIME<br>10/27/2004<br>WIP<br>Legal Research on state's motion to dismiss and initial draft of response | ezukauskas<br>Legal Research<br>Nick Simmons | 4.33<br>0.00<br>0.00<br>0.00 | 125.00<br>T@4 | 541.67 |

EXHIBIT 6
Page 1 of 3 Ex. 1

3/22/2005
3:47 PM

Disability Law Center of Alaska
Slip Listing

Page    2

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 28          TIME<br>10/28/2004<br>WIP<br>Preparation/review of IHO's prehearing order. | skerr<br>Preparation<br>Nick Simmons | 0.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 112.50 |
| 26          TIME<br>10/29/2004          11/1/2004<br>WIP<br>Legal Research and drafting of response to state's motion to dismiss | skerr<br>Legal Research<br>Nick Simmons | 1.34<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 301.56 |
| 27          TIME<br>11/9/2004<br>WIP<br>Review of state's reply on state's motion to dismiss | skerr<br>Review<br>Nick Simmons | 0.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 112.50 |
| 29          TIME<br>11/29/2004<br>WIP<br>Review of IHO's decision on motion to dismiss DEED and discussed/emailed client | skerr<br>Review<br>Nick Simmons | 0.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 112.50 |
| 31          TIME<br>12/6/2004<br>WIP<br>Preparation for hearing, exhibits and witness list, discussion with parents | skerr<br>Preparation<br>Nick Simmons | 2.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 450.00 |
| 30          TIME<br>12/8/2004          12/9/2004<br>WIP<br>Preparation of pleadings, prehearing brief | skerr<br>Prep Pleadings<br>Nick Simmons | 3.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 675.00 |
| 33          TIME<br>12/12/2004<br>WIP<br>Legal Research in preparation for hearing | skerr<br>Legal Research<br>Nick Simmons | 1.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 225.00 |
| 32          TIME<br>12/12/2004<br>WIP<br>Meeting with clients prior to hearing | skerr<br>Meeting<br>Nick Simmons | 2.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 562.50 |
| 19          TIME<br>12/13/2004<br>WIP<br>Court Appearance- Due Process Hearing Before Linda Cerro | skerr<br>Court<br>Nick Simmons | 9.17<br>0.00<br>0.00<br>0.00 | 225.00<br>T | 2062.50 |

EXHIBIT _E_
Page _2_ of _3_ Ex. 1

3/22/2005
3:47 PM

Disability Law Center of Alaska
Slip Listing

Page    3

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 34            TIME<br>1/7/2005            1/14/2005<br>WIP<br>Preparation of pleadings, research and<br>drafting of posthearing brief. | skerr<br>Prep Pleadings<br>Nick Simmons | 15.83<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 3562.50 |
| 35            TIME<br>1/21/2005            1/24/2005<br>WIP<br>Preparation of pleadings, review of district's<br>posthearing brief and preparation of reply<br>brief. | skerr<br>Prep Pleadings<br>Nick Simmons | 2.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 450.00 |
| 37            TIME<br>2/9/2005<br>WIP<br>Review of Hearing Decision and Order | skerr<br>Review<br>Nick Simmons | 2.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 562.50 |
| 38            TIME<br>2/9/2005<br>WIP<br>Conference with client regarding decision<br>and email/letter to client regarding time line<br>for appeal, etc. | skerr<br>Conference<br>Nick Simmons | 1.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 225.00 |
| 36            TIME<br>2/22/2005<br>WIP<br>Conversation with client and letter to IHO<br>regarding bus transportation documentation. | skerr<br>Correspondence<br>Nick Simmons | 0.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 112.50 |
| 39            TIME<br>3/22/2005<br>WIP<br>Letter to opposing counsel with fee demand. | skerr<br>Correspondence<br>Nick Simmons | 0.33<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 75.00 |
| 18            TIME<br>3/22/2005            11:24 AM<br>WIP<br>Research regarding attorneys' fees | skerr<br>Legal Research<br>Nick Simmons | 2.68<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 602.50 |

| Grand Total | | | | |
|---|---|---|---|---|
| | Billable<br>Unbillable<br>Total | 57.50<br>0.00<br>57.50 | | 12024.90<br>0.00<br>12024.90 |

EXHIBIT E

Page 3 of 3
Ex. 1



**DISABILITY LAW CENTER OF ALASKA**

**ANCHORAGE**

3330 Arctic Boulevard
Suite 103
Anchorage, AK 99503
(907) 565-1002
FAX (907) 565-1000
1-800-478-1234

March 22, 2005                                      Via Fax & Mail

Brad Owens
Jermaine, Dunnagan and Owens
3000 "A" Street, Suite 300
Anchorage, AK 99503

RE:    N.S. and ASD, HRG No. 05-12

Dear Brad:

Enclosed please find our attorneys' fees statement in this matter. As you know, the parents prevailed in this case, and the ASD did not appeal. The Simmons' are, therefore, a prevailing party and are entitled to attorneys fees consistent with the IDEA. Thus, we are requesting that ASD pay DLC all attorneys' fees. The total amount to date is $12,024.90.  This amount reflects both reasonable rates and a reasonable amount of time spent on the matter. Please note that we have not charged the ASD for any costs, such as paralegal time of Patti Freeman, courier costs, copying or postage.

It is significant as well that the Simmons attempted to resolve the problems through the use of the DEED complaint system[1], and obtained DEED decisions in their favor with which the ASD simply failed to fully comply. This necessitated attorney involvement. Therefore, we believe DLC is entitled to all attorneys' fees.

Please let us hear from you or your client ASD within seven days of this letter (March 29, 2005) that the ASD will pay the above attorneys' fees. As usual, it is our preference to avoid a "second litigation" on attorneys' fees as we would much rather spend our time representing other individuals with disabilities who desperately need our assistance. However, if we do not receive confirmation of payment by March 29, 2005, please understand that we will consider seeking recovery of the fees through the appropriate legal mechanisms.

Thank you for your attention to this matter.

Very truly yours,

Sonja D. Kerr
Supervising Attorney
C:    Simmons



MEMBER · OF · THE
N A T I O N A L
ASSOCIATION · OF
P R O T E C T I O N · &
A D V O C A C Y
S Y S T E M S

---

[1]    Please note that the Simmons consulted with the DLC as they filed the complaints with the DEED but that DLC  has not and is not seeking fees for work in that regard.

EXHIBIT F
Page   1   of  Ek  1

**JDO**

**Jermain Dunnagan & Owens, P.C.**
LAW OFFICES

| WILLIAM K. JERMAIN | J. R. FRIEDMAN | SARAH E. JOSEPHSON |
| CHARLES A. DUNNAGAN | DIANE F. VALLENTINE | MATTHEW SINGER |
| BRADLEY D. OWENS | W. MICHAEL STEPHENSON | MARK P. MELCHERT |
| RANDALL G. SIMPSON | ANDRENA L. STONE | CHRISTINA OTTO TERENZI |
| HOWARD S. TRICKEY | EUGENIA G. SLEEPER | ROBERT E. HENDERSON |
| GREGORY C. TAYLOR | | MATTHEW K. TEAFORD |
| GARY C. SLEEPER | ERIC J. BROWN | BLAIR MARLOWE CHRISTENSEN |

3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503-4097
TELEPHONE (907) 563-8844
FAX (907) 563-7322
E-MAIL info@jdolaw.com

SERVING ALASKANS SINCE 1976

March 31, 2005

<u>VIA FACSIMILE 565-1000</u>

Sonja Kerr
Disability Law Center of Alaska, Inc.
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

Re:    <u>N.S. and the Anchorage School District</u>
DEED HR No. 05-12

RECEIVED
APR 0 1 2005

Dear Sonja:

I received your letter dated March 22 that provided billing records for the attorney's fees of $12,024.90 you claim in the above matter. We have reviewed your bill and believe your request for attorney's fees is excessive for several reasons. First, you did not prevail on all of the issues you raised and submitted to the Hearing Officer. Second, you included hours that were related to the dismissal of the DEED. Third, the hourly rate you have used is substantially higher than the rate you claimed earlier this school year in another matter. And, fourth, some of the time you have charged involved unnecessarily duplicative time.

*Proposed Settlement offer*

Very truly yours,

JERMAIN, DUNNAGAN & OWENS, P.C.

Bradley D. Owens

cc:    J. Sjolander

3227.1070 - #101,961

EXHIBIT 6
Page 1 of 1
Ex. 1



**DISABILITY
LAW CENTER**
O · F · A · L · A · S · K · A

**ANCHORAGE**

3330 Arctic Boulevard
Suite 103
Anchorage, AK 99503
(907) 565-1002
FAX (907) 565-1000
1-800-478-1234

April 1, 2005                                        By Email, Fax and Mail

Brad Owens
Jermain, Dunnagan and Owens
3000 A Street, Suite 300
Anchorage, AK 99503-4097

Dear Brad,

Thank you for your letter of March 31, 2005. Please provide me any case law supporting your March 31, 2004 response as well as any specific explanation of your rationale in proposing $▆▆▆▆▆

DLC requests that you more carefully review the situation and agree to make full payment of the attorneys' fees and costs in this matter. I will wait until Monday, April 4, 2005 to file the fees complaint, although the drafting will begin this weekend.

Please confirm whether or not you will accept service pursuant to Rule 4. If I do not hear from you in the affirmative, I will simply assume that you will not accept service and this will result in more costs to your client when we prevail on the fees action.

To respond to your statements:

1. **The DEED Motion Necessitated by ASD's Misleading Representations.**

The total amount of fees related to the DEED's motion to dismiss is $1,030.73. Thus, even if your argument is correct, which we seriously doubt, the total amount a court would deduct for the DEED motion is $1,030.73. Had the ASD simply complied with DEED's corrective action orders, the parents would not have been forced to even bring the due process hearing. The ASD created the situation, not the parents. The ASD asserted up to and including until the date of the hearing that it had complied, thus misleading the parents which was one reason the parents named the DEED as a party. To mislead the parents into thinking that the ASD had complied with all the requirements and that the fault lay with DEED required the parents to name DEED. To require the parents to name DEED and have to respond to a motion and then later assert that the parents' attorney cannot be paid for a responsive motion in order to determine the correct process on this point. Had the ASD simply "come clean" about its noncompliance with the DEED orders, DEED would not have been named because the parents would have known that ASD mislead DEED and the parents.

20 U.S.C. 1415(i)(G) states that: "The provisions of subparagraph (F) shall not apply to any action or proceeding if the court finds that the State or local

**MEMBER · OF · THE
N A T I O N A L
ASSOCIATION · OF
P R O T E C T I O N · &
A D V O C A C Y
S Y S T E M S**

EXHIBIT 4
Page 1 of 3       Ex. 1

educational agency unreasonably protracted the final resolution of the action or proceeding, or there was a violation of this section."

The ASD clearly protracted final resolution. While it is true that the parents did not prevail on the DEED's motion to dismiss, it is also true that the question of whether DEED could or must be a party to such a hearing was an unanswered question of law as of September 30, 2004. In that regard, and given the situation, it is clear that the parents had no alternative but to defend the motion which was brought by the DEED. There was no Alaska case law directly on point. Had the parents not defended the motion, given ASD's misrepresentations about compliance, the ASD could later have claimed that the DEED should have been a party to the action and thus, the ASD had less liability. The ASD created the problem and ASD should pay the full amount of attorneys' fees.

2.  Reasonable Fee Rate.

I am unaware of any basis by which a defendant can assert that a plaintiff attorneys' prior fee is the fee that controls an action. If you are aware of some, then please let me know. The amount I am requesting of $225.00 per hour is clearly reasonable. See, e.g. *Shapiro v. Paradise Valley*, 374 F.3d 857 (9th Cir. 2004) (finding that an hourly rate of $250.00 is reasonable.) I have now nearly sixteen years of experience in representing children with disabilities in school matters.

The purpose of the HCPA, as well as other civil rights fee shifting statutes, is to make it possible and even attractive for lawyers to accept certain kinds of cases. Indeed, Congress's most frequently expressed concern in 1986 was not with securing reimbursement for parents who had paid attorney's fees, but representation for those who could not. Reasonable hourly rates are determined not "by reference to the rates actually charged the prevailing party," *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906-08 (9th Cir.1995), but "according to the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), which typically is the community in which the district court sits, *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.1991). Even a cursory review of fee rates in Alaska would show that for a specialized area of practice such as this, and given a practitioner with a great deal of experience, $225.00 is clearly a reasonable rate.

My fees have been previously ordered by federal district courts, at rates of $100 (in 1996), $150.00 (in 2002). In 2003, a federal court awarded a rate of $200.00 in a case in which I submitted an affidavit of support since I had trained the two special education attorneys (with far less experience than I have) actually seeking that rate. I specifically ask that you stipulate to my rate, or, in the alternative, provide me with some justification as to why my rate of $225.00 should be less, and, in your view, how much less.

3.  Efficient Number of Hours and Services.

I do not see any duplicative time in our billing statement. In fact, the total number of hours requested is quite reasonable. The total hours requested is just 57.50 hours of time; 3.33 ours

of time is Teresa's time and 4.33 hours is Edie Z's time. The use of both Edie's time and Teresa's time was an effort to reduce or limit my time as much as possible. Again, we did not even bill you for Patti Freeman's paralegal time ($80.00 an hour), copying, costs, courier or postage. This is a bare bones statement.

4. Parents Clearly Prevailed.

It is clear that the parents substantially prevailed in this action. "A prevailing party is defined as a party who succeeds 'on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit' *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quotation omitted)." Parents who succeed on significant issues when they achieve the benefits they sought in bringing the action are entitled to fees as prevailing party. *ISD 11 v. Pachl*, 38 IDELR 123 (D. Ct. MN 2002)(awarding over $44,000 in fees to my office. *McSomebodies, et al., v. Burlingame Elementary School District*, 897 F.2d 974 (9th Cir. 1990) (awarding attorneys' fees for work at the administrative hearing level). Here, the parents proved that the ASD did not comply with the orders of not one, but two DEED corrective action orders. The hearing preparation was efficient and the hearing orderly and properly conducted. The IHO found a denial of a free appropriate public education, ordered compensatory services and financial payments by the ASD. After the IHO's order which ordered submissions about transportation, the ASD deliberately refused to comply with the IHO's order. This shows a pattern by the ASD that establishes the type of atmostphere in which it is very difficult for parents to seek enforcement without legal assistance. Given all of the facts in place, and especially the clear refusal of the ASD to comply with the corrective action orders and the IHO's order, all of which necessitate the assistance of an attorney, the amount we are requesting for fees is extremely reasonable.

Further, I respectfully request that you provide this office with the amount of fees and costs your office billed the ASD for this case. If you are unwilling to provide this information based on this request, we will seek the information through a FOIA request.

I look forward to hearing from you and hope that a second litigation concerning the fees on this matter will not be necessary after you have more carefully reviewed the situation. Please pay the $12, 024.90.

Very truly yours,

*Sonja D. Kerr*

Sonja D. Kerr
Supervising Attorney
c:       Simmons
         D. Fleurant

# Jermain Dunnagan & Owens, P.C.
LAW OFFICES

| | | |
|---|---|---|
| WILLIAM K. JERMAIN | SAUL R. FRIEDMAN | SARAH E. JOSEPHSON |
| CHARLES A. DUNNAGAN | DIANE F. VALLENTINE | MATTHEW SINGER |
| BRADLEY D. OWENS | W. MICHAEL STEPHENSON | MARK P. MELCHERT |
| RANDALL G. SIMPSON | ANDRENA L. STONE | CHRISTINA OTTO TERENZI |
| HOWARD S. TRICKEY | EUGENIA G. SLEEPER | ROBERT E. HENDERSON |
| GREGORY C. TAYLOR | | MATTHEW K. TEAFORD |
| GARY C. SLEEPER | ERIC J. BROWN | BLAIR MARLOWE CHRISTENSEN |

3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503-4097
TELEPHONE (907) 563-8844
FAX (907) 563-7322
E-MAIL info@jdolaw.com

SERVING ALASKANS SINCE 1976

April 15, 2005

VIA FACSIMILE 565-1000

Sonja Kerr
Disability Law Center of Alaska, Inc.
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

Re:  N.S. and the Anchorage School District
     DEED HR No. 05-12

Dear Sonja:

I received your letter dated April 1 explaining your demand for the attorney's fees of $12,024.90 in the above matter. While we appreciate the additional information you have provided, we continue to believe your request for attorney's fees is excessive for the reasons stated in the March 31 letter.

*Proposed Settlement offer*

Very truly yours,

JERMAIN, DUNNAGAN & OWENS, P.C.

Bradley D. Owens

cc:  J. Sjolander

3227.1070/102702

EXHIBIT __I__
Page __1__ of __1__

SONJA D. KERR (AK BAR NO. 0409051)
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Boulevard, Suite 103
Anchorage, Alaska 99503
Telephone:    (800) 478-1234/907-565-1002
Email:        akpa@dlcak.org

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

N.S. by and through                          Case No. _____
his parents, J.S. and R.S.,

v.

Anchorage School District,
               Defendants

---

    Comes now, Sonja D. Kerr and being first duly sworn, deposes and states as follows:

1.    I am counsel of record in this matter, and am admitted to the Bar of this Court and the State Bar of Alaska as of September, 2004. Prior to that I had been admitted to a number of courts and jurisdictions. I an attorney experienced in special education and disability matters, having practiced in this area since the 1988-1989 school year.

2.    Ex. A – D are true and correct copies of the administrative decisions in this case and reflect that N.S. is the prevailing party.

3.    The fees in this matter, referenced at Ex. E are $12, 024.90. My hourly rate is $225.00, reflective of my nearly 17 years of experience practicing special education law in various jurisdictions. The total hours reflected on the bill are 57.50 hours which is a reasonable amount of time given the nature and

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002          Fax 907-565-1000
1-800-478-1234

EXHIBIT ____    Ex. 1
Page ____ of ____    Page 47 of 48

complexity of this case. DLC did not charge costs such as courier, copying, or faxing.

4.    I have diligently attempted to resolve this fees dispute without the necessity of additional litigation as reflected in Ex. F, G, H, and I.

Further, affiant saith not.

Dated this 27th day of July, 2005.

_Sonja D. K_____

Sonja D. Kerr, #0409051

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002    Fax 907-565-1000
1-800-478-1234

EXHIBIT J    Ex. 1
Page 48 of 48
Page ___ 2 of 2