Bradley D. Owens, Esq.
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 563-8844
Facsimile: (907) 562-7322

Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| N.S. by and through<br>His parents, J.S. and R.S., <br><br>     Plaintiffs, <br><br>  vs. <br><br>Anchorage School District, <br><br>     Defendant. | <br><br><br><br><br><br><br><br>Case No. 3:05-cv-0177 (TMB) |

## OPPOSITION TO PLAINTIFFS' PETITION
## FOR ATTORNEY FEES

COMES NOW DEFENDANT, Anchorage School District, by and through

its attorney, Jermain Dunnagan & Owens, and hereby opposes Plaintiffs' Petition

for Attorney Fees.

A.     **The Amount of Attorney Fees Claimed by Plaintiffs Is Not Proportionate to the Extent of their Success**

"[T]he most critical factor" in determining the reasonableness of an

attorney's fees award "is the degree of success obtained."[1]  In *Hensley v.*

*Eckerhart*, the U.S. Supreme Court stated:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. [2]

The Court specifically noted that if the party succeeded on only one of several

claims, "a fee award based on the claimed hours clearly would have been

excessive."[3]

Here, plaintiffs claim only that the hearing officer "ruled substantially" in

their favor and do not address the extent of their success.[4]  Moreover, they do not

cite any of the factors bearing on reasonableness of attorney's fees to support their

motion.[5]  Plaintiffs should not be allowed to wait to argue the "most critical

factor" – their extent of success – or the other factors bearing on reasonableness in

---

[1] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[2] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[3] *Id.*

[4] Memorandum in Support of Plaintiff's Motion for Summary Judgment at 3, 8.

[5] *Hensley v. Eckerhart*, 461 U.S. 424, 430, n.3 (1983).

a response to which defendant cannot reply.[6]  Instead, the court should reduce

plaintiff's attorney fees to reflect their limited success as outlined below.[7]

Plaintiffs raised the following issues regarding the Corrective Action Order

issued in Complaint 04-04:

> (a) Did the District provide compensatory special education and related services to the Student, the amount, type and the dates of delivery of those services determined in cooperation with the parent?

> (b) Did the District submit documentation of meetings with the complaint, offers made, and a schedule of the agreed upon compensatory services to DEED by January 16, 2004?

> (c) Did the District submit documentation of the delivery of the agreed upon services to DEED within 10 working days of the completion of services?

Plaintiffs also raised the following issues regarding the Corrective Action Order

issued in Complaint 04-14.

> (a) Did the District schedule an IEP team meeting by August 9, 2004, with a representative from the district's transportation office in attendance, to consider the unique transportation needs of the Student, and develop an appropriate transportation plan for the 2004-2005 school year?

> (b) Did the IEP team clearly document this transportation plan in an IEP amendment and submit it to DEED by August 16, 2004?

> (c) Has the IEP Amendment addressing the unique transportation needs of the student been substantially implemented?[8]

---

[6] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

[7] *Id.*

[8] *See* Decision and Order, Feb 7, 2005, at 2.

1.    **Complaint 04-04.**

The first issue regarding the Corrective Action Order issued in Complaint 04-04 was whether the District provided compensatory special education and related services to the Student, the amount, type and the dates of delivery of those services determined in cooperation with the parent.  On this issue, the Due Process Hearing Officer held that the District worked cooperatively with the parents to arrive at an agreement but failed in providing 25 of the 30 hours of compensatory services in social and behavioral skills agreed upon.[9]  The officer held that this was due to "confusion" and "misunderstandings between the parties, not from any willful or bad faith actions."[10]  While the District generally cooperated with the parent and provided services, plaintiffs prevailed on the additional 25 hours.

The second issue was whether the District submitted documentation of meetings with the complaint, offers made, and a schedule of the agreed upon compensatory services to DEED by January 16, 2004.  On this issue, the officer held that although the District did not submit the required documentation by the due date, its ultimate filing on June 30, 2004, was reasonable under the circumstances.  According to the officer, "The delay was caused by the implicit agreement of the parties, is excusable, and did not result in a denial of FAPE."[11]  The District prevailed on this issue.

---

[9] *See* Decision and Order, Feb 7, 2005, at 7.

[10] *See* Decision and Order, Feb 7, 2005, at 7.

[11] *See* Decision and Order, Feb 7, 2005, at 8.

The third issue was whether the District submitted documentation of the delivery of the agreed upon services to DEED within 10 working days of the completion of services. The officer held that this requirement "has not been violated."[12] According to the officer, "This requirement will not be ripe until completion of the 60 Sylvan hours, and of the compensatory hours ordered herein."[13] The District prevailed on this issue.

Plaintiffs raised three issues regarding the Corrective Action Order issued in Complaint 04-04, and the School District won on two of the three issues. Plaintiffs' attorney fees should be reduced accordingly.

### 2.    Complaint 04-14.

The first issue regarding the Corrective Action Order issued in Complaint 04-14 was whether the District scheduled an IEP team meeting by August 9, 2004, to consider the unique transportation needs of the Student and develop an appropriate transportation plan for the 2004-2005 school year. On this issue, the Due Process Hearing Officer held that the District's failure to schedule an IEP team meeting by August 9, 2004, "was excusable under the circumstances."[14] However, the District violated Order 04-14 by not scheduling the meeting early

---

[12] *Id.*

[13] *Id.*

[14] *See* Decision and Order, Feb 7, 2005, at 9.

enough in August and by only providing the parents with one hour notice of the meeting.[15]

The second issue was whether the IEP team clearly documented this transportation plan in an IEP amendment and submitted it to DEED by August 16, 2004. On this issue, the officer found that there was no explanation for the District's delay.[16]

The final issue was whether the IEP Amendment addressing the unique transportation needs of the student had been substantially implemented. On this issue, the officer held that the family's transportation problems continued at least into November, 2004, and that this violated the student's entitlement to FAPE.[17]

Of the six issues raised by plaintiffs, the Anchorage School District prevailed outright on two. In addition, plaintiffs only partially prevailed on some issues, such as the decision that the District worked cooperatively with the parents to arrive at an agreement but, due to confusion and misunderstanding, failed to provide 25 of the 30 hours of compensatory services in social and behavioral skills agreed upon.[18]

Finally, the U.S. Supreme Court has held that "where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees,

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *See* Decision and Order, Feb 7, 2005, at 7.

is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."[19]  In this case, plaintiffs were not awarded any damages for three of the issues on which they prevailed: the District's failure to schedule the IEP team meeting early enough in August, to provide proper notice of the IEP team meeting, and to timely submit the transportation plan to DEED in an IEP amendment.[20]  Any award of attorney fees should be reduced given plaintiffs' partial and limited success.

**B.    Plaintiffs should not recover for hours spent responding to a successful motion by a different Defendant**

In their motion for attorney fees, plaintiffs include hours they spent reviewing and responding to the motion to dismiss filed by the Alaska Department of Education and Early Development (DEED).  Plaintiffs included the DEED as a separate defendant, and the Anchorage School District was uninvolved in this portion of the litigation.  Moreover, plaintiffs did not prevail on this issue.  The DEED won the motion to dismiss.  The Anchorage School District should not have to compensate plaintiffs for the $1143.23 spent litigating this issue.[21]

---

[19] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)(quoting *Riverside v. Rivera*, 477 U.S. 561, 585 (1986)(Powell, J., concurring in judgment)).

[20] *See* Decision and Order, Feb 7, 2005, at 9-10.

[21] *See* Complaint and Fees Petition, Exhibit E at 1-2 ($75 reviewing state's motion to dismiss, $541.67 researching and drafting response to motion to dismiss, $301.56 researching and drafting response to motion to dismiss, $112.50 reviewing state's reply on motion to dismiss, and $112.50 reviewing decision on motion to dismiss and discussing/emailing client).

C.    <u>**Plaintiff's Hourly Rate Should be Reduced**</u>

As Judge Singleton noted in his Order on Dec. 16, 2005, "[w]hile the actual fees charged may be considered, they are not controlling, particularly where legal services are provided by a non-profit corporation or by an attorney working fully or partially pro-bono."[22]    Here, the Disability Law Center is a federally-funded agency that does not charge clients.[23]    Accordingly, it is asking for additional income, not recouping expenses.    While $225/hour may be within the range for comparable attorneys with plaintiff's experience, the fact that plaintiff is federally-funded and does not charge clients should be considered in setting an appropriate rate.    The affidavits of Philpot and Liles should be disregarded as they are out-of-state attorneys who have no knowledge of the local community or legal fees.[24]

D.    <u>**Plaintiff's Bill Should be Reduced where Duplicative, Excessive, or Unclear.**</u>

Finally, some of the hours billed by counsel were duplicative, excessive, or unclear.    For example, counsel billed for 2.5 hours on February 9, 2005, to review the 10-page hearing decision and order, an excessive amount for any attorney, let alone one billing at such a high hourly rate.[25] As the First Circuit has noted,

---

[22] Order, Dec. 16, 2005 at 2.

[23] *Id.* at 3.

[24] Memorandum in Support of Plaintiff's Motion for Summary Judgment at 9, Exhibits 4-5.

[25] Complaint and Fees Petition, Exhibit E at 3, Exhibit C.

"[F]irms that would justify high hourly charges presuppose particular familiarity and expertise, which should reduce the time needed to do the work."[26]

In addition, it appears counsel block-billed for "preparation of pleadings, research and drafting of posthearing brief."[27]  It is unclear from the billing statement whether this was all in one day or over the course of the week of January 7-14, 2005.[28]  If counsel claims this occurred in one day, that seems unlikely.  If counsel block-billed over the course of a week, she has deprived defendant of its ability to properly challenge the expenditures, and the expenditures should be reduced.  Counsel also billed for two employees, Sonja Kerr and Teresa Holt, to attend the initial meeting on September 9, 2004, with the client, which is duplicative.[29]

## E.    Conclusion

The Court should strike the portion of attorney fees relating to the dismissal of the DEED, strike any duplicative hours, reduce the hourly rate, and reduce the remaining fees to reflect the limited extent of plaintiffs' success on the merits.

---

[26] *Ackerley Communications of Mass. v. City of Somerville*, 901 F.2d 170 (1st Cir. 1990)(citation omitted).

[27] Complaint and Fees Petition, Exhibit E at 3.

[28] *Id.*

[29] *Id.* at 1.

DATED at Anchorage, Alaska this _____ day of March, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.


By:    */s/ Bradley D. Owens*
Bradley D. Owens
Alaska Bar No. 7610122


**CERTIFICATE OF SERVICE**

This is to certify that on this _____ day of
March, 2006, a true and correct copy of the
foregoing was mailed, postage prepaid, to:

Sonja D. Kerr
Disability Law Center of Alaska
3330 Arctic Boulevard, Suite 103
Anchorage, AK 99503


*(s) Kathie Meyer*
Kathie Meyer

3227.1163/115664